**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JASMINE FROST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 25-CV-00023-CDL |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

Before the Court is the Defendant State Farm Fire and Casualty Company's Partial Motion to Dismiss and Brief in Support (the "Motion") (Doc. 14). By the consent of the parties, (Doc. 40), the undersigned has the authority to grant or deny the Motion in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.    Background

The present Motion is premised on a provision in an insurance contract that limits Plaintiff Jasmine Frost's time to bring a breach of contract claim against her Defendant insurer to one year from the date of loss on which her claim is premised. (Doc. 14 at 3). Plaintiff does not contest that the insurance contract's one year limitations provision is valid and enforceable under Oklahoma law, (Doc. 22 at 5). However, she argues that the Court should estop Defendant from enforcing the provision because Defendant misled Plaintiff such that she was unable to file her claim within the limitations period. (*Id*. at 4). Plaintiff alleges that Defendant, as a result of years of reducing claims staff and increasing total policies issued, has overwhelmed their adjusters with too many claims, rendering them

unable to timely communicate with Plaintiff about the status of her claim. (*Id*. at 3). Plaintiff alleges Defendant was aware of this inability and concealed it from Plaintiff, delaying investigation and resolution of the claim such that Plaintiff missed the contractual deadline to file suit. (*Id*. at 4, 13).

Plaintiff has alleged that she is a Tulsa homeowner whose home was damaged in the "Father's Day Storm" of June 18, 2023. (Doc. 2-2 at 11). Several large tree branches fell onto her roof, tearing through her kitchen ceiling and displacing several of the trusses in her attic. (*Id*. at 12–13). The storm left the home without power for several days, and when it returned, the HVAC system no longer functioned properly. (*Id*. at 14). Plaintiff made a claim for benefits on June 22, 2023 with Defendant, her home insurer, and on June 27, an adjuster came to Plaintiff's home to assess the damage. Plaintiff alleges that, while Plaintiff did inform the adjuster of the HVAC issue and the adjuster did go into Plaintiff's attic, the adjuster did not investigate the HVAC system nor did he discover "glaring damage to several trusses in the attic." (*Id*. at 14–15). That same day, Defendant estimated Plaintiff's repair costs to total $16,338.81, approved $15,007.19 for payment, and issued a check for that amount less $300 already paid for loss of spoiled food, $14,707.19, denoting the payment was for "Wind or Hail - building." (*Id*. at 15).

Plaintiff alleges she hired a contractor to begin repairing her roof. (*Id*. at 16). However, the contractor ceased repairs upon identifying misaligned trusses causing an unsafe structural condition. (*Id*.). The contractor gave a repair estimate of $27,573.08, which Plaintiff uploaded to Defendant on July 14, 2023. (*Id*. at 17). On August 7, 2023, State Farm issued another payment to Plaintiff in the amount of $4,495, again denoting it

was for "Wind or Hail – Building." (*Id*.).

On October 13th, Defendant closed Plaintiff's claim pending receipt of further information and issued a summary of loss totaling $19,502.69 after the deductible. (*Id*. at 18). The last communications Plaintiff alleges to have received directly from Defendant consist of two letters requesting detailed tree removal invoices uploaded October 16th and the 24th, (*Id*. at 18–19), and Plaintiff contends she provided the requested invoice promptly both times, consisting of $3,000 to repair the fence and $8,625 to remove the tree. Defendant again requested these documents on the 24th, stating it had not received a detailed tree invoice including "removal of tree off house, removal of trees off the ground, removal of tree debris from property, and photos of decking showing damage." (*Id*. at 18). Plaintiff contends her earlier submissions contained this information, and that she sent all the requested documents in a third time.  (*Id*.). Plaintiff alleges no further direct communication from Defendant after this October 24th date despite her numerous attempts to contact Defendant in the months to follow. (*Id*. at 18–20).

Plaintiff also alleges, but does not provide precise dates, that her contractor communicated directly with a supervisor working for Defendant. (*Id*. at 19). The supervisor apparently informed Plaintiff's contractor that another adjuster would come to inspect Plaintiff's property, but that adjuster never came. (*Id*.).  Plaintiff eventually replaced her HVAC system out of her own pocket for $6,536. (*Id*. at 21). Plaintiff has alleged no further direct communications from Defendant after October 24th, 2023 and the contractual limitations date of June 18th, 2024, a period of almost eight months. Plaintiff filed the instant suit against Defendant in state court on December 10, 2024, and on January 15,

2025, Defendant timely removed the action to this Court. (Doc. 2) (Doc. 2-1 at 4).[1]

## II.    Legal Standards

To survive dismissal, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss under 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The threshold for stating such a claim is plausibility: the complaint need not contain "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In assessing a complaint, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## III.    Discussion

While Plaintiff does not contest that her breach of contract claim is untimely under the contractual limitations provision, she argues the Court should nonetheless permit the

---

[1]    Plaintiff originally filed suit against her Oklahoma insurance agent, as well, creating an issue of subject-matter jurisdiction. (Doc. 2). All parties have since stipulated to the dismissal of all claims against that agent, and Plaintiff now proceeds against Defendant State Farm only. (Doc. 38).

claim to advance under a theory of equitable estoppel.

Equitable estoppel may be invoked to "bar[] a party from alleging or denying certain rights which might otherwise have existed because of the party's voluntary conduct." *Sullivan v. Buckhorn Ranch P'ship*, 119 P.3d 192, 201 (Okla. 2005). Oklahoma courts have recognized

> five essential elements to establish equitable estoppel: (1) there must be a false representation or concealment of facts; (2) it must have been made with actual or constructive knowledge of the real facts; (3) the party to whom it was made must have been without knowledge, or the means of discovering the real facts; (4) it must have been made with the intention that it should be acted upon; and (5) the party to whom it was made relied on, or acted upon it to his or her detriment.

*Nat'l Am. Ins. Co. v. New Dominion, LLC*, 499 P.3d 9, 20 (Okla. 2021) (citing *Sullivan*, 119 P.3d at 202).[2] To prevail, the party asserting estoppel must have relied on the false representation or concealment in good faith. *Sullivan*, 119 P.3d at 201.

Plaintiff's allegations, viewed in the light most favorable to her, plausibly state the elements of estoppel but for the final, causal element: even accepting as true that Defendant

---

[2]    Plaintiff has argued that "the Oklahoma Supreme Court has clarified that limiting estoppel to these specific elements is too narrow." (Doc. 22 at 9 (citing *Merritt v. Merritt*, 73 P.3d 878, 883 (Okla. 2003))). The case Plaintiff cites does not stand for this proposition. While the *Merritt* court opined that "a court sitting in equity is to promote and achieve justice with some flexibility," that court did not apply equitable estoppel to affirm the trial court's judgment, much less did it condone doing so outside the conventional five-element framework that Oklahoma courts have applied since their first years of formation. *See Bragdon v. McShea*, 107 P. 916, 918 (Okla. 1910) (adopting the five-element test from the "Cyclopedia of Law and Procedure"). The *Merritt* court rejected the child support defendant's equitable estoppel argument for lack of good faith and because "there is no evidence that the father has taken now a legal position inconsistent with his earlier action." *Id.* Having found at least one element of estoppel deficient, that the court did not analyze each element of estoppel does not render those elements dispensable.

intended Plaintiff to rely on the misrepresentation, among others, that it was "making sure 'the claim process goes as smoothly as possible for [Plaintiff],'" (Doc. 22 at 10), when in reality Defendant knew and concealed the fact that its adjusters were utterly too overwhelmed to timely communicate with Plaintiff about her claim, Plaintiff has not shown how her reliance on that misrepresentation precluded her from filing suit within the one-year contractual filing period. As Plaintiff alleges, Defendant investigated and paid Plaintiff's claim within ten days of the loss. (Doc. 2-2 at 15). Within a few weeks of receiving an updated estimate from Plaintiff's roofer, Defendant submitted additional payment. (*Id.* at 17). As best can be discerned from the Petition, Defendant stopped responding to Plaintiff's claim inquiries entirely on Dec. 24, 2023. (*Id*. at 18). At this point, Plaintiff still had just under eight months to file suit against Defendant before the June 18, 2024 deadline—almost two-thirds of the limitations period. These alleged facts show that Defendant, although generally unresponsive to Plaintiff's inquiries, nonetheless acted promptly and decisively in both initially paying Plaintiff's claim and, at least in the first instance, adjusting that claim's value. While Defendant did indicate in October that it might further adjust the value based on Plaintiff's responsive submissions as to tree removal and damaged decking (*Id*. at 18), Defendant's proceeding eight months of silence could not have plausibly been calculated to lull Plaintiff into abstaining from suit until the passing of the limitations deadline.

This conclusion comports with Oklahoma law on the equitable tolling of limitations as it has been recently discussed in another decision from this district, *Gaddy v. State Farm Fire & Cas. Co.*, 25-CV-367-MTS, 2025 WL 3124451 (N.D. Okla Nov. 7, 2025). In that

case, the Court cited to cases wherein Oklahoma courts found that insurers waived the contractual limitations period where they did not deny liability in time to permit their insureds to institute suit within the limitations period. *Id*. at *5 (citing *Prudential Fire Ins. Co. v. Trave-Taylor Co.*, 152 P.2d 273, 275 (Okla. 1944); *Agric. Ins. Co. of Watertown v. Iglehart*, 386 P.2d 145, 146 (Okla. 1963); *Farm Bureau Mut. Ins. Co. v. Lay*, 398 P.2d 506, 508 (Okla. 1965)). The *Gaddy* Court found no waiver or equitable tolling of the limitations period. *Id*. at *6.  Notably, the elements needed to plead waiver or equitable tolling appear less onerous than those needed to plead equitable estoppel—there is no separate need to prove the insurer concealed or misrepresented facts it intended the insured to act upon— but there is nonetheless the requirement that such delay in fact precluded the insured's timely institution of suit. *See id*.

The facts of the present case are even less suitable to a finding of waiver than those in *Gaddy*. In that case, the Court found no waiver where the insurer had not finally adjusted the insured's claim until two months before the one year limitations period had run, whereas Plaintiff's allegations indicate that Defendant made final payment on her claim in August, ten months before the limitations period had run, and that it closed the claim in October, eight months before the limitations period had run. While these dates are not wholly determinative to a finding of waiver, they render implausible the possibility that Defendant's conduct caused Plaintiff to reasonably believe, for that period of almost eight months, that Defendant was still considering her request for adjustment of the loss and that filing suit would not be necessary to recover what she was still owed under the policy. *See Roemer v. State Farm Fire & Cas. Co.*, No. 06-CV-0663-CVE-PJC, 2007 WL 52786, at *2

(N.D. Okla. Feb. 14, 2007) (finding no waiver where Plaintiff had three months to file after denial of her claims); *Gamble v. State Farm Fire & Cas. Co.*, No. CIV-25-396-R, 2025 WL 2997887, at *6 (W.D. Okla. Oct. 24, 2025) (finding no waiver where Plaintiff had four months to file suit from denial of claim and where Plaintiffs made "no allegations of any communications or actions by Defendant during those four months which might warrant their belief that Defendants would reconsider their claim"). Accordingly, Plaintiff has failed to allege sufficient facts for this Court to equitably set aside the contractual limitations provision, and Plaintiff's breach of contract claim is untimely.

**IV.     Conclusion**

Based on the above analysis, Defendant State Farm Fire and Casualty Company's Partial Motion to Dismiss (Doc. 14) is **granted**. Plaintiff Jasmine Frost's breach of contract claim is **dismissed** without prejudice.

IT IS SO ORDERED this 31st day of March, 2026.

Christine D. Little
United States Magistrate Judge

8